UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Harold E. Curry** | : | |
| 7898 Hoskins Rd. | : | |
| Radnor, OH, 43066, | : | |
| | : | **Case No. _____** |
| **Vivian Curry** | : | |
| 7898 Hoskins Rd. | : | |
| Radnor, OH, 43066, | : | **Judge _____** |
| | : | |
| **AMH Development LLC**, | : | |
| 781 Brooksedge Plaza Dr. | : | |
| Westerville, OH 43081, | : | **JURY DEMAND ENDORSED HEREON** |
| | : | |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| **Jerome Township, Ohio**, | : | |
| 9777 Industrial Parkway | : | |
| Plain City, OH 43064, | : | |
| | : | |
| *Defendant.* | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**COMPLAINT FOR DECLARATORY JUDGMENT, PERMANENT INJUNCTION, AND COMPENSATORY DAMAGES**

Plaintiffs Harold and Vivian Curry (the "Currys") and AMH Development LLC ("AMH") (together, "Plaintiffs"), by and through their undersigned counsel, and for their Complaint for Declaratory Judgment, a Permanent Injunction, and Compensatory Damages against Defendant Jerome Township, Ohio ("Jerome Township" or "Township") aver and allege as follows:

## INTRODUCTION

1.      This is the third litigation matter brought against Jerome Township in less than two years in response to a vocal minority of Township residents abusing the zoning and referendum processes to the detriment of landowners and their private property rights. This case marks the seventh development that has been subject to this "status quo" zoning scheme in less than two years, the tenth since 2016, and which has now impacted a total of 14 plaintiffs and 16 landowners. Beginning in 2015, a small number of organized and vocal individuals in the Township began this scheme to torture the zoning process by misusing the referendum process to stop new homes from being built in the Township. These individuals tout that the purpose of their scheme is to keep the Township "rural," but in reality these residents seek to keep *everyone else's* undeveloped land in the Township as greenspace.  This "status quo" zoning is completely arbitrary, capricious, and illegal.

2.      Private property rights are inviolate under the Ohio Constitution. OHIO CONST. ART. I, § 19. Ohio townships are creatures of statute and have a very narrow and limited authority to restrict the use of private property through zoning – namely, where the zoning restriction is in the interest of public health and safety and in accordance with the township's comprehensive plan. OHIO REV. CODE § 519.02.

3.      Jerome Township is located between the cities of Dublin and Marysville along the U.S. 33 and 42 corridors.  This area, like nearly every other Central Ohio community, has experienced substantial population growth over the last decades.

4.      Recognizing the reality of this substantial growth in the number of Township residents, the Township adopted a Comprehensive Plan in 2008.  The Township's Comprehensive Plan documented the main channels for traffic and future growth. The Comprehensive Plan also

planned for and projected <u>preferred</u> future land uses. In accordance with Ohio law, the Comprehensive Plan specifically calls for zoning to include the clustering of new homes in planned, residential subdivisions in certain areas throughout the Township. The Comprehensive Plan also identifies areas within the Township that are appropriate to be zoned for mixed use developments and industrial developments.

5.      Recently, a small group of individual residents have developed an end-run around the Comprehensive Plan's provisions for future land use by misusing the referendum process. Over the last several years, these individuals have attempted to put every new single-family residential development to a referendum no matter how large or small the development. These individuals have also used the referendum to fight planned mixed use developments. Each time, the referendum process has been initiated without regard to the developments' compliance with the Township's Comprehensive Plan and in the absence of any evidence that these developments are somehow unhealthy or unsafe.

6.      The scheme is simple. As soon as a residential development is approved by the Township's Trustees, a referendum petition is circulated among members of an email list. The petitioners gather signatures – often using false information or ill motivation – to subject the target development to a referendum. Rather than consider whether the development's zoning complies with the Township's Comprehensive Plan, the referendum petitioners are concerned with the "type of development" and the "type of people" that the new community might bring to the Township. Each referendum has sought to permanently relegate the undeveloped farmland in question to open space at the expense of the landowners' and developers' property rights. This exercise has occurred nine (9) times since late 2015.

-3-

7.      The Curry family has owned land in Jerome township for more than 50 years. They are seeking to sell their farm ("Curry Farm") to pay for medical expenses. AMH – the buyer of Curry Farm – brought Curry Farm before the Township Trustees and the Zoning Council for rezoning in 2021.

8.      AMH invested months of effort and significant funds to put create a plan for the Curry Farm development in compliance with the requirements of the Jerome Township Zoning Resolution and the Comprehensive Plan.

9.      The Township Trustees held a public hearing to consider AMH's zoning application for Curry Farm on September 28, 2021. During that hearing, there were favorable comments about the Curry Farm development's creative efforts to achieve compliance with the Comprehensive Plan. Indeed, Trustee Megan Sloat's comments were captured by the meeting minutes of September 28, 2021:

> Ms. Sloat indicated to the applicant that she appreciated preserving the natural features of the area, providing open space, and providing connectivity to Pioneer Crossing.

10.     The Township Trustees voted unanimously to approve the Curry Farm Development on October 5, 2022.

11.     Despite AMH's efforts, a referendum petition for Curry Farm was certified just two months later on December 7, 2021. That same group of individuals representing a vocal minority of Township residents once again sought a referendum to preserve the status quo and to create what amounts to an exclusionary zoning applied to the Curry Farm development. These Township residents disregarded Ohio zoning law and trampled upon Plaintiffs' private property rights protected by the United States and Ohio Constitutions.

12.    As a direct result of that referendum petition, Plaintiffs have been deprived – and continue to be deprived – of their right to lawfully use their property because they are being forced to wait for the referendum to appear on the ballot on May 3, 2022, despite Plaintiffs' full compliance with the Township's Comprehensive Plan.

13.    It is well established that the Township is legally responsible for the deprivation of Plaintiffs' constitutional rights whether the deprivation occurs "by referendum or otherwise." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448, 105 S. Ct. 3249, 3259 (1985). The Township's illegal and unconstitutional scheme has caused – and will cause – Plaintiffs more than $5 million of damages. Plaintiffs therefore seek injunctive, monetary, and declaratory relief for the Township's violation of the United States and Ohio Constitutions and violation of Ohio zoning law.

## JURISDICTION AND VENUE

14.    This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

15.    Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1367, and 28 U.S.C. § 2201. Jurisdiction supporting Plaintiffs' claims for attorneys' fees is conferred by 42 U.S.C. § 1988.

16.    Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

17.    Harold Curry and Vivian Curry are landowners and farmers in Jerome

Township. The Curry Family has owned land in Jerome Township for more than 50 years and specifically owns the 50.67 acres of land located at US42, Plain City, Ohio 43064 in Jerome Township, Ohio, with Parcel Number 1500070540000 ("Curry Farm").

18.     AMH Development LLC is a foreign limited liability company duly registered to conduct business in the State of Ohio. AMH has contracted with the Currys as Buyer of Curry Farm.

19.     Jerome Township, Ohio is a township located in Union County, Ohio.

20.     In addition to the foregoing parties, the Attorney General of the State of Ohio is being served with a copy of this complaint pursuant to OHIO REV. CODE § 2721.12(A).

## FACTS COMMON TO ALL CLAIMS

A.     **Ohio Townships and Their Residents Have Very Limited Authority to Zone Property.**

21.     The right to use and enjoy private property is fundamental in Ohio where "[p]rivate property **shall ever be held inviolate**. . . ."  OHIO CONST. Art. I, § 19 (emphasis added).

22.     Ohio townships "'have no inherent or constitutionally granted police power, the power upon which zoning legislation is based,'" to zone property.  *Bd. of Twp. Trs. of Bainbridge Twp. v. Funtime, Inc.*, 55 Ohio St.3d 106, 108 (1990), *quoting Yorkavitz v. Bd. of Trustees of Columbia Twp.*, 166 Ohio St. 349, 351 (1957).

23.     Rather, Ohio townships' authority to zone property is determined by the General Assembly. *Id.*, *quoting Yorkavitz* at 351 ("'Whatever police or zoning power townships of Ohio have is that delegated by the General Assembly, and it follows that such power is limited to that which is expressly delegated to them by statute.'"). *See also Apple Group, Ltd. v. Granger Twp. Bd. of Zoning Appeals*, 144 Ohio St.3d 188, 2015-Ohio-2343, at ¶ 6, *citing Torok v. Jones*, 5 Ohio St.3d 31, 32 (Ohio 1983) ("In Ohio, the authority of a township to enact zoning ordinances derives

not from the township's inherent authority or the Ohio Constitution, but from the General Assembly.").

24.     The General Assembly expressly limits townships' power to adopt zoning regulations only to the extent that the zoning regulations are "in the interest of the public health and safety" and "in accordance with a comprehensive plan."  OHIO REV. CODE § 519.02.

25.     Consequently, Ohio township zoning actions that exceed this limited authority are void as a matter of law.  *See Columbus Bituminous Concrete Corp. v. Harrison Twp. Bd. of Zoning Appeals*, 156 N.E.3d 841, 2020-Ohio-845 at ¶ 25.

26.     Likewise, township residents' opportunity to participate in the legislative process of township zoning through a referendum arises under the Ohio Revised Code.  *Cook-Johnson Realty Co. v. Bertolini*, 15 Ohio St. 2d 195, 200, 239 N.E.2d 80 (1968).  Ohio township residents have no inherent or constitutional right to zone property through a referendum.  *Id.*

27.     Regardless of whether township zoning actions occur through township trustees or through a referendum, the "'[l]egislative acts by the people are to be controlled and construed by the same principles as are applied to legislative acts of the state legislature.'"  *Trafalgar Corp. v. Bd. of Miami Cty. Comm'rs*, 2d Dist. Miami No. 2001 CA 6, 2001 WL 1018620, *2 (Sep. 7, 2001), *quoting Fulmer Supermarket, Inc. v. State, Director, Dept. of Liquor Control*, 10th Dist. Franklin No. 88AP-26 (Sept. 13, 1988).  Just like township officials, township residents can therefore only impose zoning restrictions on private property to the limited extent that the restrictions are "in the interest of the public health and safety" and "in accordance with a comprehensive plan."

28.     Because "[a] referendum . . . is the [government] itself legislating through its voters," the Township is responsible for the referendum result. *See Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 678, 96 S. Ct. 2358 (1976) (internal quotations and citation omitted); *Lucas v.*

*Forty-Fourth Gen. Assembly*, 377 U.S. 713, 737, 84 S. Ct. 1459, 1474 (1964) (One's "constitutional rights can hardly be infringed simply because a majority of the people choose that it be."); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448, 105 S. Ct. 3249 (1985).

29.     Consequently, a referendum does not insulate the result from judicial review and invalidation simply because an election was conducted.  *See Visconsi-Royalton, Ltd. v. City of Strongsville*, 8th Dist. Cuyahoga, No. 83128 2004-Ohio-4908, ¶ 24. ("[A] zoning ordinance upheld by referendum is subject to the same constitutional test as an ordinance enacted by a municipality.").  Public participation in land-use decision making is circumscribed by the same procedural and substantive safeguards against capricious and arbitrary actions by township officials.  *Eastlake v. Forest City Enters.*, 426 U.S. at 676.

30.     Indeed, the United States Supreme Court has long held that "[i]f the substantive result of [a] referendum is arbitrary and capricious, bearing no relation to the police power, then the fact that the voters . . . wish it so would not save the restriction."  *Id.*

**B.      Jerome Township Adopts a Zoning Resolution and Comprehensive Plan.**

31.     Jerome Township originally adopted the Jerome Township Zoning Resolution (the "Zoning Resolution") in the mid-1950s.

32.     The Township amended the Zoning Resolution extensively in the early 1970s and again in 2015.

33.     The Zoning Resolution includes numerous zoning districts, including the Agricultural District, Rural Residential District ("Rural Residential"), Low Density Residential District, Medium Density Residential District, Office/Research/Medical District, Commerce District, Local Retail District, Regional Retail District, Special Recreation District, Planned Development District, and Open Space District.

34.     The Jerome Township Board of Trustees (the "Trustees") also adopted the Jerome Township Comprehensive Plan (the "Comprehensive Plan"), which was designed to guide the process of growth and development in the Township.

35.     The Comprehensive Plan correctly anticipated the population growth of the US 33 Northwest Corridor.  The Comprehensive Plan recognizes that Jerome Township "is in a position to benefit from new development" while also preserving "the rural character of Jerome Township."

36.     Indeed, the Comprehensive Plan promotes developments that cluster housing in order to preserve "large land areas and rural character."  The Comprehensive Plan also encourages developments that provide "a variety of lots sizes and housing types" to offer housing that is amenable to families with children and affordable enough for many people.

**C.     Prior to 2019, Jerome Township Routinely Rezoned Properties from Rural Residential to Planned Development District.**

37.     In 2008, approximately 75% of the land in Jerome Township was considered agricultural, but only 0.4% of the residents were farmers.  Comprehensive Plan at 5-3.  The vast majority of the land was undeveloped and zoned "Rural Residential" by default.

38.     The Rural Residential District is a vestige of Jerome Township's rural heritage, and in fact most townships' histories.  Properties in Jerome Township under this zoning classification are required to have a minimum 1.5 acre lot for each home and must have sufficient land to accommodate well and septic systems for on-site water and sanitary systems.  Zoning Resolution § 425.04.  The Zoning Resolution, however, explains that Rural Residential is intended "for land which is suitable or used for very low-density residences **as defined in the Comprehensive Plan**." Zoning Resolution § 425.001 (emphasis added).

39.     Like many townships in Central Ohio, Jerome Township has experienced significant population growth over the last ten years.

40.     Although most – if not all – of Jerome Township's residential land was originally zoned Rural Residential, Jerome Township rezoned numerous properties from Rural Residential to the Planned Development District and other zoning districts.

41.     The Jerome Township Zoning Map – which depicts the Planned Development District in purple and Rural Residential in green – makes clear that the Planned Development zoning classification is prevalent throughout Jerome Township:



42.     Indeed, the purple areas shown on the Zoning Map are the Planned Development districts. The starred property (*) depicts the Curry Farm and its proximity to similarly situated planned districts.



43.     Jerome Township previously rezoned numerous properties from Rural Residential to Planned Development District, such as developments now known as the Woods at Labrador, Mitchell Crossing, New California Woods, New California Hills and Jerome Village.

44.     In fact, Jerome Township even approved rezonings from Rural Residential to Planned Development District when the accompanying development deviated significantly from the Comprehensive Plan.  The Woodbine Village development, approved by Jerome Township before 2015, is one such example.

45.     On October 5, 2021 – the same date on which the rezoning of Curry Farm was unanimously approved by the Jerome Township Board of Trustees – a 741-acre mixed-use industrial park was also approved for rezoning. This 741-acre multi-use did not comply with the Comprehensive Plan, includes a possible 770 residential units, and did not have a final traffic study, yet no referendum was filed. This action reflects the arbitrary nature of the Township's residents and the basis for their opposition.

**D.      Recently, a Vocal Minority of Individuals Began to Misuse the Referendum Process to Delay and Block *Any* Residential Development in the Township.**

46.     Recently, since early 2016, a vocal minority of individuals developed a scheme to stop any further residential development in Jerome Township using a tactic known as "status quo" zoning.

47.     This small group of existing residents seeks to bar any new residential development and, in turn, any new residents in the Township.

48.     "Status quo" zoning is inherently exclusionary, completely arbitrary, capricious, and illegal.  It results in economic segregation rather than promoting the health and safety of the community.  By prohibiting new development and new residents from moving into the area, persons of certain economic status are excluded from the community under the guise of zoning regulations.

49.     A vocal minority of individuals in the Township arbitrarily decided that undeveloped property within the Township should remain rural, large-lot green space.

50.      Beginning in late 2015, these individuals have expressed opposition to *any* new residential development – or new residents – in the Township that deviate from the status quo.

51.     These individuals make sweeping, unsubstantiated claims that new residential development – which, by extension, includes new residents – will degrade the Township and existing residents' own way of life.

52.     There is a significant demand for new housing in Jerome Township. The Building Industry Association of Central Ohio recently determined that there is a substantial shortage of residential homes in Central Ohio needed to meet projected population and job growth in this area. Just last year, the U.S. housing market has a shortage of 5.5 million homes to meet demand.  In Central Ohio, housing inventory reached an all-time low despite high demand from homebuyers.

53.     Worse, this vocal minority of Township residents falsely contend that additional residential development will somehow transform Jerome Township into an "urban" area without any regard for the carefully planned details of these residential communities – such as Curry Farm – that endeavor to preserve the rural character of the Township.  This is the epitome of exclusionary "status quo" zoning.

54.     This small group of residents misuses the referendum process to prevent new residential development from occurring in the Township regardless of whether the residential development satisfies the Zoning Resolution and the Comprehensive Plan.

55.     There have recently been several residential developments where property owners and developers sought to rezone Rural Residential land to Planned Development District.  Each of these developments satisfied the Township's Zoning Resolution and the Comprehensive Plan.  As such, Jerome Township officials had no discretion or lawful basis to deny the rezonings.  Consequently, Township officials approved the rezonings pursuant to the limits of their zoning authority.

56.     Despite the numerous rezonings that have been approved in Jerome Township by Township officials in the past, only one rezoning application has been approved without a referendum since 2015 – an anomaly caused by the global pandemic's impact on door-to-door signature gathering.

57.     Every other residential rezoning application that Township officials have approved since 2015 has been subject to a referendum.

58.     In each instance, once the referendum is filed, the status quo is preserved and the land is reverted back to the antiquated default of Rural Residential zoning despite the landowners' and developers' efforts and significant investments into the studies, approvals, and applications to

ensure that their proposed land use complies with the Zoning Resolution and the Comprehensive Plan.

59.     Landowners and developers immediately experience irreparable harm as a result of this arbitrary use of the referendum process because their approved zoning is reverted back to Rural Residential once the referendum is filed.

60.     This status quo zoning scheme exceeds the Township's limited zoning authority in each instance where the rezoning is approved and in compliance with the Zoning Resolution and the Comprehensive Plan.

**E.     Jerome Township Has Prevented Plaintiffs from Putting Their Properties to Any Economically Beneficial Use.**

61.     Through an arbitrary, unreasonable, and unconstitutional scheme, Jerome Township misused the referendum process to delay and ultimately block Plaintiffs from developing their property.

62.     Despite Curry Farm's full compliance with the Zoning Resolution and the Comprehensive Plan, Township citizens abused the referendum process to arbitrarily stop the Curry Farm development.

**i.  Curry Farm - An Extension of the Adjacent Development and An Important "Connector" Road.**

63.     AMH entered into a contract to purchase approximately 50.67 acres of land along US42 from Harold Eugene Curry and Vivian Curry ("Curry Farm"). The land was zoned Rural Residential.

64.     AMH plans to build a single-family residential subdivision named Curry Farm. Again, AMH planned Curry Farm to comply with every aspect of the Zoning Resolution and the Comprehensive Plan to develop a residential subdivision with workforce housing.

65.     Curry Farm is located immediately west of a single-family subdivision that is currently under construction. Development of Curry Farm will provide the key connection and the final 'leg' of an important 'by pass' road that will alleviate traffic congestion at the intersection of US42 and Industrial Parkway. The Curry Farm Development will also extend multi-use trails and paths to more parts of the community – otherwise unconnected at this time.

66.     AMH subsequently applied to rezone the Curry Farm to Planned Development District to build the Curry Farm single-family residential development. The planned Development far exceeds the Township's Zoning Resolution minimum requirement of 40% open space with 46% percent open space, to include a club house with pool, a large prairie field for both active or passive recreation, and to preserve trees and existing riparian corridor that cuts through the property.

67.     Curry Farm fully complies with the Comprehensive Plan and exceeds the minimum requirements of the Zoning Resolution. A true and accurate copy of the illustrative design for Curry Farm is included here:



68.     The Comprehensive Plan calls for Curry Farm to be in a residential 'conservation

district':

**Residential Conservation District**

Residential Conservation District uses are characterized
by clustering residential uses for the purpose of
preserving large areas of open space and/or significant
natural features.   Smaller lots are approved as an

incentive for developers to preserve the open space
and natural features that help define the character
of the community.   Conservation developments are
typically designed as planned unit developments to take
advantage of the flexibility to provide varying densities
and lot sizes in exchange for preserving open space
for community use. In these types of developments the
township and the developer typically negotiate overall
lot size, development standards, open space network,
amenities and maintenance requirements to create the
desired result. The amount of open space provided in a
conservation development should not be less than 40%
of the gross acreage of the property being developed.
Depending on the design and the natural features of the
site, density can range between 1 and 2 units per gross
acres with 2 being the maximum density recommended.
Anything above 2 units per acre will require lot sizes
smaller than what may be desired for these areas.
Because of the large quantities of open space required,
conservation developments are well suited to large
parcels of land having significant natural features and
environmental constraints. For these reasons they also

help a community preserve the characteristics that
are important to maintaining rural character. A good
example of a conservation type development is the
Jerome Village project recently approved within the
township. Areas designated on the future land use plan
as Residential Conservation District include the areas
with significant natural features directly surrounding
the Glacier Ridge Metro Park (including the Jerome
Village project) and the areas surrounding the New
California subdivision, also having significant natural
features worth preserving, see Figure 6-7.



Figure 6-7: Residential Conservation District; Source: BHC

Jerome Township
Union County, Ohio

**Comprehensive Plan**

September 25, 2008

6-8

69.     The rezoning plan for Curry Farm to Planned Development District fully satisfies the Comprehensive Plan – i.e., by preserving 46% open space with three distinct and useful areas for community enjoyment, maintaining a density of less than 2 units per acre, and connecting roads and paths – as such district sits within the fully integrated plan:

JEROME TOWNSHIP COMPREHENSIVE LAND USE PLAN, 2008





Regional Retail (2.5% of the Township)

Mixed Commercial and Retail (2.8% of the Township)

Conservation Development (23.7% of the Township)

70.     Throughout the zoning process, AMH also made commitments to benefit the community beyond those required by the Comprehensive Plan or the Zoning Resolution. For example, AMH agreed to add significant buffering areas of trees, mounds, and shrubs with the specific intent to alleviate any aesthetic concerns with the active farm activities to the south.

71. Nonetheless, without regard for the specific benefits and amenities proposed in the Curry Farm development, a vocal minority of individuals 'keyed in' on the fact that AMH intends to rent the single-family homes to tenants. That vocal minority went about the business of seeking referendum petition signatures for reasons such as rentals, 'subsidized housing,' and unsubstantiated allegations about reductions in existing home values.

72. In short, this group of Township residents sought to exclude the renters of Curry Farm from the community. These individuals claimed that Curry Farm did not bring the "type of residents" or "value" that they desired to the Township without evidence to support such allegations. Two residents went so far as to 'scare' the community by suggesting the Curry Farm was for subsidized housing. As a result, this vocal minority of individuals misused the referendum process to arbitrarily reverse the rezoning of the Curry property and to limit the Currys to their property's outdated Rural Residential zoning.

73. This result is inapposite to the land use recommended – and previously approved for the Curry Farm Development – by the Township's own Comprehensive Plan.

### ii. Curry Farm Cannot Be Developed under Rural Residential Zoning Requirements

74. Developing Curry Farm under the Township's Rural Residential zoning restrictions is infeasible. It is also unreasonable, unsafe, and uneconomical.

75. Curry Farm has a unique physical shape and certain natural features of land in its location. As a result, clustering homes is necessary to avoid building in the riparian corridor and to properly align the roadway network with the adjacent residential development currently under construction. Preservation of certain natural features and roadway connections are not feasible under a strict application of the outdated Rural Residential zoning.

76.     Moreover, the centralized stormwater management system necessary to manage flood events requires developments with a much higher density than what is permitted under the Rural Residential zoning restrictions to be economically feasible.

77.     Finally, it is uneconomical to develop the AMH Property as Rural Residential.

78.     As recognized in the Township's own Comprehensive Plan, cited above, the Planned Development District zoning mitigates each of these issues. In many cases, the Planned District results in a better development.

79.     As provided by the Comprehensive Plan, Curry Farm maximizes conservation of the land's natural environment. For example, Curry Farm is designed to preserve 46% of the land as open space and to preserve natural features of the environment by clustering homes. Rezoning Curry Farm to Planned Development District – as was already unanimously approved by the Township Trustees – would therefore provide environmental protection that is absent under the status quo Rural Residential zoning.

80.     Further, the design of Curry Farm is specifically intended to address traffic planning and safety concerns. The design of Curry Farm specifically 'ties into' an important 'by pass' roadway that was specifically planned to re-distribute traffic from the intersection of US42 and Industrial Parkway to alleviate traffic congestion at that location. This connection of neighborhoods and roads achieves the specific result planned by the Township and reflected in the Comprehensive Plan.

81.     AMH also completed and submitted a traffic impact study to the Union County Engineer that addresses both (a) site specific improvements (turn lanes) and (b) off-site regional vehicular impacts and offers an objective-criteria analysis for monetary contributions. AMH's monetary contribution will be used for the pending ODOT project at the intersection of US42 and

Industrial Parkway. This monetary contribution represents the 'fair share' from AMH from actual math calculations performed by traffic engineering professionals. This study and ultimately the contribution specifically rebuts several residents' amorphous claims of 'traffic issues.'

82. Upon information and belief, the Union County Engineer has declined to review traffic studies from Jerome Township until the rezoning cases 'survive' referendum. Indeed, the AMH study submitted in July of 2021 has not yet been final approved by Union County.

83. Consistent with the approach to meet or exceed the Jerome Township Comprehensive Plan, this Honorable Court recently presided over litigation concerning this same subject matter with respect to 4 other developments that resulted in a Consent Decree. The landowners and developers in that case – *The Craig D. Scott Revocable Trust et al. v. Jerome Township* (Case No. 2:21-cv-03993) – alleged the same compliance with the Comprehensive Plan and still the abuse of the referendum process by Jerome Township. That Consent Decree was approved by the Court in an Order dated December 30, 2021.

84. Finally, Curry Farm will increase the number of new homes to help satisfy the unmet housing demand in Jerome Township while staying within the Zoning Resolution's density requirements for Planned Development Districts. AMH develops and builds traditional single-family residential developments and rents the homes to working class families with full maintenance and care for the land, the buildings, and the common elements. The fact that AMH offers these homes for rent provides a 'starter home' opportunity, facilitates more 'work force housing,' and lowers barriers to entry into the home ownership market. These notes are also reflected as Township Goals in the Comprehensive Plan:

### COMMUNITY GOALS, OBJECTIVES AND IMPLE-MENTATION STRATEGIES

\*\*\*

**Goal 3:** Maintain a high quality physical environment that provides quality residential opportunities supported by small businesses, preserved open space and historic character and improved public areas.

- Encourage mixed-use districts in the appropriate locations as a means of increasing the housing supply while promoting diversity and neighborhood vitality

\*\*\*

**Goal 10:** Use Conservation Design in areas with abundant sensitive natural features and low density designations.

- Promote conservation development strategies for new residential development on large parcels, especially where significant natural resources exist
    - o  *Add a Planned Residential Conservation District to the zoning ordinance to promote the general*

\*\*\*

**Housing**

**Goal 23:** Undertake a variety of strategies to preserve housing affordability and to increase housing density and diversity in appropriate locations.

- Allow for increased housing density adjacent to commercial areas and particularly near transit centers
- Provide a variety of housing opportunities within the Township, including rental apartments, condominiums and a broad range of single family housing and lot sizes
- Promote the location of higher density mixed-use developments in established commercial corridors.
    - o  *Revise zoning standards in commercial districts to encourage mixed-use development*
    - o  *Revise zoning standards to encourage infill and redevelopment of commercial properties in existing under utilized commercial corridors*

### iii. Curry Farm Is Approved By Every Zoning Authority

85.    Recognizing that the Curry Farm development fully complies with the Comprehensive Plan and Zoning Resolution, every zoning authority or recommending body approved the Curry Farm rezoning and development plan.

86.    On August 16, 2021, the LUC Zoning & Subdivision Committee unanimously voted to recommend approval of AMH's rezoning application and the Curry Farm development plan after a thorough review of the application and staff report.

87.    Following a public hearing, the Township Zoning Commission voted unanimously to recommend approval of the AMH rezoning application for Curry Farm to the Trustees on August 23, 2021.

88.    Subsequently, the Township Trustees held their public hearing on September 28, 2021. During that hearing, the Trustees expressed appreciation for the design and conservation aspects of the proposal, as well as AMH's commitment to provide walking paths and trails.

89.    Attached hereto as Exhibit A is a copy of the September 28, 2021, Jerome Township Trustee meeting minutes where such comments are reflected.

90.    On October 5, 2021, the Trustees voted to rezone the Curry Farm property to Planned Development District and approved the Curry Farm development plan. A true and accurate copy of Resolution 21-105 approving the rezoning of Curry Farm is attached as Exhibit B.

91.    AMH spent significant sums to secure the land for Curry Farm, to plan and design the development, and to apply for and obtain approvals from the Township's Zoning Commission, the LUC Zoning & Subdivision Committee, and the Township Trustees.

**iv. A Minority of Township Residents Revealed Their Dubious Intentions and Obtained a Referendum for Illegitimate Reasons.**

92.     Despite Curry Farm's compliance with the Comprehensive Plan and the Zoning Resolution, a vocal minority of individuals voiced opposition to *any* development on the Currys' property.

93.     During the public hearing held by the Zoning Commission on August 23, 2021, one of the few individuals that regularly opposes development in the Township – typically based upon his own personal criteria and NOT the criteria contained within the Township's Comprehensive Plan or Zoning Resolution – addressed the panel. This resident acknowledged that AMH had conducted and submitted a pending traffic study, and he expressed the notion that he "was having trouble finding another reason to oppose this development."

94.     Nonetheless, just to express an anti-development sentiment, that same resident complained about items that are not within the Jerome Township Zoning Resolution and for reasons that are not within the lawful jurisdiction or regulation of Jerome Township as it relates to zoning at the Township Trustees' public hearing that was held on September 28, 2021.

95.     During that same September 28, 2021 hearing, additional anti-development individuals raised a question about AMH bringing a rental community to the Township. These individuals even questioned and accused AMH of bringing a 'subsidized housing project' to the Township even though AMH specifically represented that the homes have a market price of $400,000.

96.     Another individual opposed the Curry Farm development because he didn't want rental homes next door to his home.

97.  Worse yet, certain Township residents took issue with the 'type of development' and the 'type of new residents' that Curry Farm would bring to the area, referring specifically to 'renters.'

98.  These same community members questioned whether Curry Farm would maintain the "value" of the community.

99.  In an online forum for Jerome Township residents called "NextDoor," one anti-development resident even attempted to defame and cast a negative light on AMH as a developer.

100.  Following the Trustees' approval of Curry Farm, a small but organized group of residents circulated a petition seeking a referendum to return Curry Farm to Rural Residential.

101.  Upon information and belief, individuals who circulated the referendum petition encouraged other Jerome Township residents to sign the petition because of 'rental housing' and based upon unproven fears about 'renters' and 'reduced home values.'

102.  Despite all AMH's efforts to address residents' concerns and despite AMH's full compliance with the Comprehensive Plan and the Zoning Resolution, the referendum petitioners have obtained enough signatures to place the matter once again on the ballot for mob rule of township zoning in May 2022.

103.  On December 7, 2021, the Union County Board of Elections certified the referendum petition to be placed on the ballot on May 3, 2022.

104.  As a result of the referendum being filed, Curry Farm has been returned to the status quo Rural Residential zoning.

105.  The Township's actions – as the representative body of the Township's residents – to impose Rural Residential zoning on Curry Farm were arbitrary, capricious, unreasonable, and do not bear a substantial relationship to the public health, safety, morals, or general welfare. Those

actions are also inconsistent with the Comprehensive Plan, which designates Curry Farm as conservation development.

106.    Nonetheless, on October 5, 2021, the Jerome Township Trustees approved Resolution 21-106 to approve a new zoning development that includes 741 acres that do not comply with the current Jerome Township Comprehensive Plan. Within that zoning are 600 new apartments and 170 new single-family homes. There was no referendum of that Township action despite the fact that this new development has 770 new homes, did not provide a traffic study or improvement plan, and did not provide a tree preservation plan. These are some of the 'random' and unlawful bases cited in support of the referendum on AMH's property, yet that sentiment was not carried forward to this other 741-acre development. As such, the lack of a referendum on the new zoning development demonstrates the arbitrariness of the Townships' efforts to thwart the Curry Farm development via a referendum.

107.    Further, the Township recently entered into a Consent Decree with a group of landowners and developers that was approved by this Court on December 30, 2021 in Case No. 2:21-cv-03993. That Consent decree – among other things – restores the Trustee-approved zoning notwithstanding an unlawful referendum that returned those properties to Rural Residential.

108.    The continued imposition of the Rural Residential zoning on Curry Farm and the delay caused by the sham referendum has resulted in and will continue to result in significant harm to the Currys and to AMH because they are being denied the ability to use their property in the lawful manner that they desire.

109.    Despite lacking any merit under Ohio zoning law and the Township's zoning authority, nearly every residential rezoning is being subjected to status quo zoning that is illegal, arbitrary, and capricious.  In each such instance, landowners and developers like the Currys and

AMH are forced to bear the costs of inevitable delays that cause them to incur significant and irreparable harm.

110.    The Currys and AMH have suffered and will continue to suffer irreparable harm while the Township subjects the Curry Farm property to status quo Rural Residential zoning that is illegal, arbitrary, and capricious in the wake of the sham referendum.

**COUNT I: 42 U.S.C. Section 1983**
**Violation of Substantive Due Process**

111.    Plaintiffs restate the foregoing paragraphs as if fully rewritten here.

112.    Jerome Township has deprived Plaintiffs of their property and liberty interests under color of law without due process of law in violation of the Due Process Clause in the United States Constitution.

113.    Plaintiffs' property and liberty interests are of a type protected by the Fourteenth Amendment to the United States Constitution.

114.    Plaintiffs possess legitimate claims of entitlement and justifiable expectations in their property and liberty interests because:

      i.    Jerome Township's current zoning of Plaintiffs' property is not in accordance with Jerome Township's Comprehensive Plan and is not in the interest of the public health and safety;

      ii.    Plaintiffs' rezoning application is in accordance with Jerome Township's Comprehensive Plan and is in the interest of the public health and safety, such that Jerome Township did not have discretion to deny Plaintiffs' rezoning application;

      iii.    Plaintiffs undertook significant actions and made substantial investments in their property such that Jerome Township's restoration of the Rural

Residential zoning classification – which was an arbitrary departure from the Comprehensive Plan and the interests of the public health and safety – will cause and has caused substantial detriment to the Plaintiffs; and

    iv.   Plaintiffs expended significant sums to design and plan Curry Farm in full compliance with the Zoning Resolution and the Comprehensive Plan.

115.    A small but vocal group's efforts to commandeer the referendum process to revert the Rural Residential zoning classification to the Plaintiffs' property are arbitrary, capricious, unreasonable, and do not bear a substantial relationship to Jerome Township's Comprehensive Plan or to the public health and safety.

116.    The referendum that caused Jerome Township to revert the Rural Residential zoning classification to the Plaintiffs' property is arbitrary, capricious, unreasonable, and does not bear a substantial relationship to Jerome Township's Comprehensive Plan or to the public health and safety.

117.    Accordingly, Plaintiffs have suffered and will continue to suffer the deprivation of their vested rights under the United States Constitution.

### COUNT II:  42 U.S.C. Section 1983
### Violation of Equal Protection

118.    Plaintiffs restate the foregoing paragraphs as if fully rewritten here.

119.    Jerome Township has subjected Plaintiffs to unequal treatment of the law under color of law in violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

120.    Previously, Jerome Township has rezoned numerous other properties that – similar to Plaintiffs' property – sought to rezone from Rural Residential to the Planned Development

District zoning classification. This includes developments that deviated from the Jerome Township Comprehensive Plan.

121.    Plaintiffs' rezoning application for Curry Farm was just as compliant or even more compliant with the Township's Comprehensive Plan than these other applications that received rezoning from Jerome Township in the past. Indeed, Plaintiffs' rezoning application for Curry Farm met or exceeded all legitimate zoning standards set by Jerome Township and is demonstrably in the interest of public health and safety.

122.    The Township treated Plaintiffs differently than the other similarly situated property owners that applied for and received rezoning of their properties from Rural Residential to Planned Development District zoning in the following ways:

> i.    The Township arbitrarily and unreasonably instituted the referendum process for improper purposes in an effort to delay any development of the Plaintiffs' property; and
>
> ii.   The referendum arbitrarily and unreasonably reverted the Curry Farm property to Rural Residential zoning.

123.    Jerome Township has no rational basis for the discriminatory treatment of the Plaintiffs.

124.    Accordingly, Plaintiffs have suffered and will continue to suffer from Jerome Township's unequal treatment of the law.

### COUNT III:  Declaratory Judgment
### Curry Farm/AMH Development

125.    Plaintiffs restate the foregoing paragraphs as if fully rewritten here.

126.     Ohio Revised Code Section 2721.03 provides that any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule, or ordinance may have determined any question of construction of validity arising under the same.

127.     The Rural Residential zoning classification as applied to the Curry Farm is unconstitutional, unreasonable, not substantially related to the public health or safety, and/or not consistent with the Jerome Township Comprehensive Plan.

128.     The Currys and AMH are therefore entitled to a declaration that subjecting the Curry Farm property to the Rural Residential zoning classification is unconstitutional, unreasonable, not substantially related to the public health or safety, and/or not consistent with the Jerome Township Comprehensive Plan.

129.     The rezoning of Curry Farm to the Planned Development District as set forth in the AMH rezoning application – which was previously approved by the Township Trustees – is constitutional, reasonable, substantially related to the public health and safety, and consistent with the Jerome Township Comprehensive Plan.

130.     The Currys and AMH are therefore entitled to a declaration that rezoning the Curry Farm to the Planned Development District and approving the AMH development is constitutional, reasonable, substantially related to the public health and safety, and consistent with the Jerome Township Comprehensive Plan.

## COUNT IV: 42 U.S.C. Section 1983
## In the Alternative, Regulatory Taking

131.     Plaintiffs restate the foregoing paragraphs as if fully rewritten here.

132.     Jerome Township's imposition of the Rural Residential zoning classification on Curry Farm – as well as the Township's failure to remove the Rural Residential zoning

classification – has deprived Plaintiffs of all economically beneficial and productive use of their property.

133.    As such, Jerome Township's imposition of the Rural Residential zoning classification as applied to Curry Farm constitutes a per se regulatory taking.

134.    Alternatively, Jerome Township's imposition of the Rural Residential zoning classification on Curry Farm – and failure to remove the Rural Residential zoning classification – interferes with Plaintiffs' investment-backed expectations and results in severe economic impacts to the Plaintiffs.

135.    Jerome Township's imposition of the Rural Residential zoning classification as applied to Curry Farm is functionally equivalent to a direct appropriation of the property and therefore constitutes a regulatory taking.

136.    Jerome Township has not provided Plaintiffs just compensation for their property.

137.    Accordingly, Plaintiffs have suffered and will continue to suffer the taking of their property without just compensation in violation of the Fifth Amendment to the United States Constitution.

## COUNT V: 42 U.S.C. Section 1983
## Due Process Taking

138.    Plaintiffs restate the foregoing paragraphs as if fully rewritten here.

139.    Jerome Township has deprived Plaintiffs of their property and liberty interests under color of law without due process of law in violation of the Due Process Clause in the United States Constitution.

140.    Plaintiffs' property and liberty interests are of a type protected by the Fourteenth Amendment to the United States Constitution.

141.    Jerome Township's imposition of the Rural Residential zoning classification on Curry Farm – and failure to remove the Rural Residential zoning classification – goes so far and destroys the value of Plaintiffs' property to such an extent that it has the same effect as a taking by eminent domain.  This imposition is an invalid exercise of the police power by the Township.

142.    Jerome Township's effective reversal of its previous approval of Plaintiffs' re-zoning application for Curry Farm through referendum goes so far and destroys the value of Plaintiffs' property to such an extent that it has the same effect as a taking by eminent domain. This imposition is an invalid exercise of the police power by the Township.

143.    Plaintiffs have suffered monetary damages as a result of Jerome Township's invalid exercise of the police power. Jerome Township's application of the Rural Residential zoning classification to Plaintiffs' property must therefore be invalidated.

## PRAYER FOR RELIEF

**WHEREFORE**, in consideration that the foregoing, Plaintiffs seek:

A.  A declaration that subjecting Curry Farm to the Rural Residential zoning classification is unconstitutional, unreasonable, not substantially related to the public health or safety, and/or not consistent with the Jerome Township Comprehensive Plan;

B.  A declaration that rezoning Curry Farm to the Planned Development District and approving the AMH development is constitutional, reasonable, substantially related to the public health and safety, and consistent with the Jerome Township Comprehensive Plan;

C.  A permanent injunction enjoining the Township from applying the Rural Residential zoning classification to Plaintiffs' property;

D. A permanent injunction enjoining the Township from preventing Plaintiffs from completing the development of Curry Farm as a planned residential community as previously approved by the Township;

E. Compensatory damages;

F. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

G. Any other declarative, injunctive, or other equitable relief that this Court deems just and appropriate.

Respectfully submitted,

*/s/ Larry H. James*_____
LARRY H. JAMES                     (0021773)
HAYLEY E. KICK                     (0100445)
CRABBE, BROWN & JAMES LLP
500 South Front Street, Suite 1200
Columbus, OH 43215
Telephone:     (614) 229-4567
Facsimile:     (614) 229-4559
Email: ljames@cbjlawyers.com
*Trial Counsel for Harold E. Curry, Vivian Curry, and AMH Development LLC*

## JURY DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted,

*/s/   Larry H. James*

LARRY H. JAMES                    (0021773)
HAYLEY E. KICK                    (0100445)
CRABBE, BROWN & JAMES LLP
500 South Front Street, Suite 1200
Columbus, OH  43215
Telephone:     (614) 229-4567
Facsimile:     (614) 229-4559
Email: ljames@cbjlawyers.com
*Trial Counsel for Harold E. Curry, Vivian Curry, and AMH Development LLC*